```
              UNITED STATES DISTRICT COURT
                       FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA
```

ATHANSAI CARAYIANNAS,            :
                                 :
        Plaintiff                :    No. 3:12-CV-01270
                                 :
   vs.                           :    (Judge Kane)
                                 :
CAROLYN W. COLVIN, ACTING        :
COMMISSIONER OF SOCIAL           :
SECURITY,                        :
                                 :
        Defendant                :

## MEMORANDUM

### Background

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Athansai Carayiannas's claim for social security disability insurance benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Carayiannas met the insured status requirements of the Social Security Act through June 30, 2008. Tr. 13, 15, 30 and 104.[1] In order to establish entitlement to disability insurance benefits Carayiannas was required to establish that she suffered

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of the Answer on September 27, 2012.

from a disability on or before that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Carayiannas protectively filed her application for disability insurance benefits on January 12, 2009, over six months after the date last insured. Tr. 101-103 and 124. The application was initially denied by the Bureau of Disability Determination[2] on July 15, 2009. Tr. 79-82. On August 13, 2009, Carayiannas requested a hearing before an administrative law judge. Tr. 13 and 83. After about 15 months had passed, a hearing was held on November 2, 2010. Tr. 25-50. Carayiannas was represented by counsel at the hearing. Id. On November 23, 2010, the administrative law judge issued a decision denying Carayiannas's application. Tr. 13-21. As will be explained in more detail *infra* the administrative law judge found that Carayiannas failed to prove that she met the requirements of a listed impairment or suffered from work-preclusive functional limitations on or before the date last insured. Tr. 16 and 18-20. On December 29, 2010, Carayiannas filed a request for review with the Appeals Council and after almost 18 months had elapsed the Appeals Council on June 4, 2012, concluded that there was no basis upon which to grant Carayiannas's request for review. Tr. 1-3 and 7-9. Thus, the

---

2. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration. Tr. 99.

administrative law judge's decision stood as the final decision of the Commissioner.

Carayiannas then filed a complaint in this court on July 2, 2012. Supporting and opposing briefs were submitted and the appeal[3] became ripe for disposition on December 24, 2012, when Carayiannas elected not to file a reply brief.

Carayiannas, who was born in the United States on May 6, 1960, graduated from high school in 1978 and can read, write, speak and understand the English language and perform basic mathematical functions such as counting change and using a checkbook and money orders. Tr. 101-102, 115, 121 and 166. During her elementary and secondary schooling, Carayiannas attended regular education classes. Tr. 122. After graduating from high school, Carayiannas did not complete "any type of special job training, trade or vocational school." Id.

Carayiannas's work history covers 22 years and at least 6 different employers. Tr. 105-114. The records of the Social Security Administration reveal that Carayiannas had earnings in the years 1978, 1981 through 1989, 1996 through 2003, and 2005 through 2009. Tr. 105-107. Carayiannas's annual earnings range from a low of $412.00 in 2005 to a high of $25,555.00 in 1987. Id.

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

Carayiannas's total earnings during those 22 years were $134,402.53. Id.

Carayiannas claims that she became disabled on February 26, 2004, because of osteoarthritis and rheumatoid arthritis which resulted in a "crooked" back and swelling in her hands, fingers and toes. Tr. 31 and 116. She does not contend that she is disabled as the result of psychiatric impairments. Id.

Carayiannas has past relevant employment as a bartender which was described as semi-skilled, light work by a vocational expert.[4] Tr. 46. Carayiannas was working as a bartender, part-

---

4. Past relevant employment in the present case means work performed by Carayiannas during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565. The terms sedentary and light work are defined in the Social Security regulations as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or
> (continued...)

time, when she applied for disability insurance benefits and at the time of the administrative hearing. Tr. 35, 106 and 117.

To be considered past relevant employment, the work must, inter alia, amount to substantial gainful activity. Pursuant to Federal Regulations a person's earnings have to rise to a certain level to be considered substantial gainful activity. The ALJ found that Carayiannas's work after February 26, 2004, could not be considered past relevant work because it was not performed at the substantial gainful activity level. Tr. 15. The relevant time period in this case for assessing whether substantial evidence supports the ALJ's decision is February 26, 2004, Carayiannas's alleged disability onset date, until June 30, 2008, when her insured status expired. Carayiannas was required to establish that she met the requirements of a listed impairment or suffered from physical functional impairments on or before June 30, 2008, which prevented her from engaging in full-time work.

For the reasons set forth below we will affirm the decision of the Commissioner.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.

---

4. (...continued)
   she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567.

See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.");  Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001);  Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

  Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d

198, 200 (3d Cir. 2008); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. <u>Brown</u>, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Commission</u>, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," <u>Cotter</u>, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason</u>, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Johnson</u>, 529 F.3d at 203; <u>Cotter</u>, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[5] (2) has an impairment that is severe or a combination

---

5. If the claimant is engaging in substantial gainful activity,
(continued...)

of impairments that is severe,[6] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[7] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part

---

5.  (...continued)
the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

6.  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two.  Id.  If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b).  An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

7.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[8]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Medical Records**

Before we address the administrative law judge's decision and the arguments of counsel, we will review Carayiannas's medical records.

There are three records that provide some information regarding Carayiannas's medical condition prior to July 1, 2008. Janice Wright, the Clinical Director of Stateline Medicine, in a letter dated March 25, 2009, reported that Carayiannas received treatment from October 4, 2002, until October 8, 2003, at

---

8.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Stateline Medicine for drug and alcohol abuse. Tr. 188. She stated that the clinic "provide[d] methadone maintenance outpatient treatment to individuals with opiate dependence addiction" but did "not provide treatment to those with pain management issues." Id.

Also, Nancy Kerner of New Directions Treatment Services in an undated letter to the Bureau of Disability Determination stated with respect to Carayiannas as follows:

> [I]t is not this agency's policy to evaluate said client's appropriateness for SSI. We feel that you or an appropriate resource should arrange for an independent evaluation.
> We also want to state that clients receiving methadone will not be affected in their ability to work. The ingestion of oral methadone does not, in itself incapacitate any person from normal functions. The above mentioned client was in our program from 3/11/04-6/17/04 and was discharged for non-compliance with treatment.

Tr. 217.

The only other medical record that pre-dates Carayiannas's date last insured is with respect to an appointment Carayiannas had with Ronald Spinapolice, M.D., on May 31, 2005. Tr. 233. After conducting a clinical interview and physical examination Dr. Spinapolice's diagnostic impression was that Carayiannas suffered from "opiate dependence secondary to chronic pain syndrome, secondary to osteoarthritis and rheumatoid arthritis." Id. In the report of this appointment Dr. Spinapolice did not give any indication regarding (1) Carayiannas's physical work-related functional abilities or (2) whether or not she met Listing 14.09A2.

It is only well after the date last insured that we encounter records which gives an indication that Carayiannas suffered from a disabling physical impairment. An evaluation by Sethuraman Muthiah, M.D., which was performed on June 17, 2009, strongly suggests that Carayiannas was disabled as of that date. Tr. 189-199. After performing a clinical interview[9] and physical examination, Dr. Muthiah's diagnostic impression was that Carayiannas suffered, inter alia, from rheumatoid arthritis. Tr. 191. However, Dr. Muthiah does not address Carayiannas's work-related functional abilities or whether she met the requirements of any listed impairment on or prior to the date last insured.[10]

Also, on July 8 and 22, 2009, and January 7, 2010, Carayiannas had appointments with Benjamin C. Schecter, M.D., a family practitioner, located in Stroudsburg, Pennsylvania. Tr. 227-228. In the report of the appointment of July 8, 2009, Dr. Schecter states that he had not seen Carayiannas for eight years and, when he last saw Carayiannas, she was suffering from

---

9. When Dr. Muthiah asked about Carayiannas's social history, including history of drug abuse, Carayiannas denied any such history. Tr. 190.

10. The record reveals that Carayiannas was found to be disabled as of July 15, 2009, and entitled to an award of supplemental security income benefits if she met the eligibility requirements with respect to household income and assets. Tr. 13. Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

hypertension and opiate and benzodiazepine dependence. Tr. 227. After conduction a clinical interview and physical examination, Dr. Schecter diagnostic impression was that Carayiannas suffered, inter alia, from rheumatoid arthritis and opiate dependence. <u>Id.</u> This diagnosis did not change at the subsequent two appointments. Tr. 228.  Dr. Schecter gave no indication regarding Carayiannas's work-related functional abilities during the relevant time period, February 26, 2004 through June 30, 2008. Tr. 227-228.

      On August 17, 2010, Dr. Spinapolice completed a questionnaire on inflammatory arthritis at the request of Carayiannas's attorney. Tr. 2230-232. The questionnaire supports a finding of disability as of the date it was completed. <u>Id.</u>  The document gives not indication when Dr. Spinapolice last examined Carayiannas or the date when the work-related functional limitations set forth in the document commenced. <u>Id.</u>

**<u>Discussion</u>**

      The administrative law judge at step one of the sequential evaluation process found that Carayiannas had not engaged in substantial gainful work activity since February 26, 2004, the onset date alleged in Carayiannas's application. Tr. 15.

      At step two of the sequential evaluation process, the administrative law judge found that Carayiannas had the following severe impairments: "osteoarthritis, rheumatoid arthritis, chronic pain syndrome and opiate dependency[.]" Tr. 16.

At step three of the sequential evaluation process the administrative law judge found that Carayiannas's impairments did not individually or in combination meet or equal a listed impairment. Id.

At step four of the sequential evaluation process the administrative law judge found that Carayiannas could not perform her past relevant semi-skilled, light work as a bartender but that she had the residual functional capacity to perform on or before June 30, 2008, the date last insured a limited range of sedentary work as defined in the regulations. Id. Specifically, the ALJ found that Carayiannas was

> capable of lifting and carrying up to ten pounds occasionally with capabilities to stand or walk for two hours and sit for up to six hours in and eight-hour day, the claimant is limited to occupations that do not require climbing ladders[,] ropes or scaffolds. The claimant may occasionally push or pull bilaterally up to ten pounds and occasionally use foot controls bilaterally. Additionally, the claimant may occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl and frequently engage in handling and fingering bilaterally with the upper extremities. The claimant should avoid concentrated exposure to cold, heat, wetness, humidity, vibration, moving machinery unprotected heights, and hazardous machinery.

Id. In setting this residual functional capacity for the relevant period the administrative law judge had to consider Carayiannas's reported symptoms and subjective complaints in light of the objective medical facts in the record and if her subjective complaints were not substantiated by the objective medical evidence the ALJ was required to make a finding as to the credibility of her complaints. The ALJ when setting the residual

functional capacity as noted above considered Carayiannas's credibility, past work and her activities of daily living and the paucity of medical records covering the relevant time period. Tr. 16-20. At the administrative hearing the ALJ questioned counsel for Carayiannas regarding that lack of medical records in evidence. Tr. 30-31. Counsel replied to that inquiry by stating that Carayiannas only had sporadic treatment during the relevant time period. Id. The administrative law judge found that Carayiannas's statements concerning the intensity, persistence and limiting effects of her impairments were not credible to the extent that they were inconsistent with her ability to engage in the work as described above.

    Based on the above residual functional capacity and the testimony of a vocational expert the administrative law judge found at step five of the sequential evaluation process that Carayiannas could perform unskilled, sedentary work as a telephone receptionist and as a sorter (clerical), and that there were a significant number of such jobs in the regional and national economies. Tr. 21.

    Carayiannas primarily argues that the administrative law judge erred by failing to find at step 3 of the sequential evaluation process that Carayiannas's severe impairments met or equaled the requirements of Listing 14.09A2 relating to Inflammatory arthritis. She also argues that the ALJ erred by finding that Carayiannas had the residual functional capacity to

15

perform unskilled, sedentary work. We have thoroughly reviewed the record in this case and find no merit in Carayiannas's arguments.

The purpose of the Listings of Impairments is to describe impairments "severe enough to prevent a person from doing any gainful activity," regardless of age, education or work experience. 20 C.F.R. § 404.1525(a); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The Listings operate as a presumption of disability without further inquiry as to whether the claimant can actually perform prior relevant work or other work available in the local, regional or national economies. Id. To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Carayiannas had the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. at 531; Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)(stating that it is the claimant's burden to present medical findings that show that his impairment matches or is equal in severity to a listed impairment).

The Social Security regulations require that an applicant for disability insurance benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the

time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. § 404.1512(c).

At step three of the sequential evaluation process the administrative law judge considered, inter alia, Listing 14.09A2 and found that Carayiannas's condition did not meet the requirements of that condition on or prior to June 30, 2008, the date last insured. Listing 14.09A2 requires a persistent inflammation or persistent deformity of one or more peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively as defined in section 14.00C7. The inability to perform fine and gross movement effectively means "an extreme loss of function of both upper extremities, i.e., an impairment(s) that interferes very seriously with the individuals ability to independently initiate, sustain, or complete activities . . . examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself . . . ."

Carayiannas has proffered no medical opinion, nor has she marshaled the evidence in the record, to support her contention that her condition met or equaled the requirements of Listing 14.09A2. No treating or examining physician stated that Carayiannas's impairments met or equaled the criteria of Listing 14.09A2. Our review of the medical evidence pertaining to the period before July 1, 2008 does not reveal evidence supporting a finding that she met Listing 14.09A2. The May, 2005, treatment

note from Dr. Spinapolice was just a snapshot picture and we cannot conclude from that one record that she had extreme loss of function of both upper extremities which interfered seriously with her ability to initiate, sustain or complete activities. In fact Dr. Spinapolice did not so indicate.

  The administrative law judge reviewed the listings and gave an adequate explanation for finding that Carayiannas did not meet or equal the criteria of a listed impairment.

  As stated above when there is a paucity of objective medical facts supporting a claimant's alleged symptoms, the administrative law judge has to consider the claimant's credibility. To the extent that Carayiannas argues that the administrative law judge did not properly consider her credibility, the administrative law judge was not required to accept Carayiannas's claims regarding her physical impairments, particularly with respect to the relevant time period. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v.

Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed and heard Carayiannas testify, the administrative law judge is the one best suited to assess her credibility.

We are satisfied that the administrative law judge appropriately took into account all of Carayiannas's physical limitations in the residual functional capacity assessment.

The administrative record which consists of only 233 pages does not reveal any statement from a treating or examining physician indicating that during the relevant time period – February 26, 2004, through June 30, 2008 – Carayiannas met the requirements of a listed impairment or suffered from work-related functional limitations that would have prevented her from engaging in any type of full-time employment.

We are satisfied that the administrative law judge appropriately took into account all of Carayiannas's physical limitations established by the medical records in setting Carayiannas's residual functional capacity for the period prior to July 1, 2008.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.

 S/ Yvette Kane
Yvette Kane, District Judge
United States District Court

Date: February 12, 2014